IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

DEVORIS ANTOINE NEWSON,           )
                                  )
        Plaintiff,                )
                                  )   NO. 3:23-cv-00081
v.                                )
                                  )   JUDGE RICHARDSON
TRINITY SERVICES GROUP, INC., et al.,  )
                                  )
        Defendants.               )

## MEMORANDUM OPINION

Plaintiff Devoris Antoine Newson, currently confined at the El Paso County Sheriff's Department in Texas, filed an amended complaint arising from events at his former place of confinement, Trousdale Turner Correctional Center (TTCC). (Doc. No. 5, "Amended Complaint".) Plaintiff also filed an application to proceed as a pauper (Doc. No. 6) and a motion including a jury demand. (Doc. No. 7.) The Amended Complaint is before the Court for initial review under the Prison Litigation Reform Act. And as explained below, to an extent this case may proceed for further development. Plaintiff should consult the accompanying Order for further instructions.

## I.     Application to Proceed as a Pauper

An inmate may bring a civil suit without prepaying the filing fee. 28 U.S.C. § 1915(a). Plaintiff's application is accompanied by a certified copy of his inmate trust account statement, as required by statute. (Doc. No. 6-1); 28 U.S.C. § 1915(a)(2). The attached certificate reflects that Plaintiff cannot pay the full filing fee in advance. (Doc. No. 6-1 at 1 (showing a zero balance at the time of filing).) Accordingly, Plaintiff's application will be granted, and he will be assessed the $350.00 filing fee. 28 U.S.C. § 1915(b).

## II.    Initial Review

The Court must review and dismiss the Amended Complaint if it is frivolous or malicious, fails to state a claim, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A; 42 U.S.C. § 1997e(c)(1). And because Plaintiff is representing himself, the Court must hold the pleadings to "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted).

### A.    Allegations

This case arises from Plaintiff allegedly working in the kitchen, being fired, and being assaulted at TTCC. As Defendants, the Amended Complaint names: Trinity Services Group Inc. (Trinity); a Trinity food steward with the last name Wagner; Trinity's director of food service with the last name Fairbanks; CoreCivic; CoreCivic CEO Damon Hininger; Captain Smith; Correctional Officer Spence; and Correctional Officer Leon. (Doc. No. 5 at 1–2.) From the context of the allegations, the Court infers that Trinity is a private entity contracted to provide food services at TTCC. And the Court takes judicial notice that CoreCivic is the private entity contracted to manage TTCC.[1] Liberally construing the Amended Complaint in Plaintiff's favor, he alleges as follows:

On February 1, 2022, Plaintiff was assigned to work as a server in the kitchen at TTCC. (Doc. No. 5 at 2.) About six months later, Plaintiff became aware that Director Fairbanks and Steward Wagner refused to process Plaintiff's work credits. (*Id.*) On August 8, 2022, Plaintiff raised this issue with Fairbanks and Wagner, and they responded, "If [you] don't like it quit, we

---

[1]  *See Trousdale Turner Correctional Center*, TENNESSEE DEPARTMENT OF CORRECTION, https://www.tn.gov/correction/sp/state-prison-list/south-central-correctional-facility.html (last visited Apr. 20, 2023); Fed. R. Evid. 201(b) (permitting judicial notice of facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned").

make our own customs here, this is our kitchen." (*Id.*) Two days later, Plaintiff filed a grievance on this issue, and a grievance staff member destroyed it. (*Id.*)

On October 10, 2022, Steward Wagner fired Plaintiff from his kitchen job. (*Id.*) Plaintiff asked why he was being fired, and Wagner responded that Trinity has a "policy and custom to fire whoever they want, [job coordinator] Blackwell can send you up here and I'll send your Black butt back." (*Id.*) The next day, Plaintiff raised this issue with Director Fairbanks, and she responded, "[t]hey do what the[y] want and [you] bet [sic] not ever step foot back in the[ir] kitchen or else." (*Id.*) On October 13, 2022, Plaintiff filed a grievance on this issue, and a grievance staff member destroyed it. (*Id.* at 3.)

On November 18, 2022, Officer Leon told Plaintiff that Director Fairbanks placed the designation of "fired" beside Plaintiff's name in some kind of database, and that Leon would enforce that designation by not allowing Plaintiff back in the kitchen. (*Id.*) That same day, Plaintiff filed a grievance on this issue. (*Id.*) Over a month later, Plaintiff received a response to this grievance, which stated that Plaintiff "could not be denied the right to work, and [he] was to return and receive pay and credits." (*Id.*)

On January 10, 2023, a new kitchen officer allowed Plaintiff to work the 2:00 a.m. shift in the kitchen. (*Id.*) During that shift, a Trinity employee with the last name Daily "incited a riot against [Plaintiff]" by telling other inmates working in the kitchen that she did not like Plaintiff and to keep Plaintiff out of her face.[2] (*Id.*) The other inmates threatened to beat, stab, and jump Plaintiff. (*Id.*) Daily told Plaintiff "to leave the kitchen and to beware of the hit that would be sent on [his] life." (*Id.*) Plaintiff left the kitchen. (*Id.*) Later that day, Plaintiff recounted this incident to

---

[2] Daily is listed as a Defendant in the original complaint but *not* (for whatever reason) the Amended Complaint. (*See* Doc. No. 5 at 1–2.) The Amended Complaint "supersede[d the] earlier complaint for all purposes." *See In re Refrigerant Compressors Antitrust Litig.*, 731 F.3d 586, 589 (6th Cir. 2013) (citation omitted). So Daily is no longer a Defendant.

job coordinator Blackwell, and Blackwell told Plaintiff to file a complaint. (*Id.*) Blackwell also told Plaintiff that many other inmates had similar experiences with Trinity, and that Trinity "had been warned several times to stop violating [Tennessee Department of Correction] policy." (*Id.*) Blackwell stated that the TTCC warden and the Tennessee Department of Correction commissioner had been notified. (*Id.*)

During the early morning of January 11, 2023, two inmates "associated with Trinity" snatched Plaintiff off his bunk, beat him, and almost stabbed him to death. (*Id.*) Those inmates told Plaintiff that he "should have stayed out the kitchen." (*Id.*) The inmates then pushed Plaintiff out of the housing pod. (*Id.*) One of those inmates did not reside in Plaintiff's housing pod but was "let in" by Officer Spence. (*Id.*) After being pushed out of the pod, Plaintiff told Spence what happened, and Spence—in retaliation against Plaintiff and to avoid being fired—told a sergeant that Plaintiff was refusing to return to the pod during a count. (*Id.*) The sergeant searched Plaintiff and threatened to spray Plaintiff if Plaintiff moved. (*Id.*) Plaintiff told the sergeant that spraying Plaintiff would lead to Plaintiff suing the sergeant. (*Id.*) The sergeant then asked what Plaintiff's issue was, and Plaintiff responded by showing his injuries and explaining that Spence allowed an inmate from another pod into Plaintiff's housing pod, resulting in Plaintiff being "almost murdered." (*Id.* at 4.)

Plaintiff was then escorted to medical and checked for injuries. (*Id.*) Plaintiff filled out an incident statement form, and CoreCivic staff refused to sign the form. (*Id.*) Plaintiff gave a copy of this statement to Captain Smith, a unit manager, and an assistant warden. (*Id.*) When Plaintiff told Smith what happened, Plaintiff was placed in a booking holding cell and was later told—in retaliation against Plaintiff and to avoid an investigation—that he "refused a cell assignment." (*Id.*)

That afternoon, Plaintiff was called to the office of the unit manager who received Plaintiff's incident statement. (*Id.*) The unit manager "reviewed the camera and corroborated" Plaintiff's statement. (*Id.*) Plaintiff requested transfer to a safer facility, and the unit manager asked whether Plaintiff needed protective custody. (*Id.*) Despite Plaintiff's life being in danger, he declined protective custody because (1) he could not "afford to be placed in confinement without access to the law library," and (2) TTCC's protective custody "is the worst place to be" because "inmates have been killed" while on it. (*Id.*) Plaintiff told the unit manager that TTCC had been covering up inmate deaths for two years. (*Id.*)

After this meeting with the unit manager, Plaintiff sent his incident statement to TTCC's chief warden, a local news channel, his father, and the Tennessee Human Rights Commission. (*Id.*) Since then, Plaintiff has experienced migraines, increased "P.T.S.D. symptoms," insomnia, paranoia, and sleep paralysis. (*Id.*) Plaintiff requested medical treatment at TTCC, but these requests were ignored. (*Id.*)

On January 15, 2023, Plaintiff told the chief warden about the attack on January 11. (*Id.*) The warden stated that he was not surprised, because CoreCivic had a "custom [of] maximiz[ing] salary wages [by] minimiz[ing] staff[,] which increases security risk." (*Id.*) This custom, the warden stated, "is why so many inmates have died [at TTCC] in the last y[ear]." (*Id.*) At the time Plaintiff completed the Amended Complaint on February 5, 2023, "at least 3 more inmates ha[d] died" at TTCC. (*Id.*) To cover up these deaths, the warden "turns off all phones[,] preventing inmates from notifying anyone." (*Id.*)

B.    <u>Legal Standard</u>

On initial review, the Court applies the same standard as under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). The Court therefore

accepts "all well-pleaded allegations in the complaint as true, [and] 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009)). An assumption of truth does not extend to legal conclusions or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

C.    Analysis

To state a Section 1983 claim, a plaintiff must allege "that a defendant acted under color of state law" and "that the defendant's conduct deprived the plaintiff of rights secured under federal law." *Handy-Clay v. City of Memphis, Tenn.,* 695 F.3d 531, 539 (6th Cir. 2012) (citations omitted). Plaintiff meets the first requirement, as it is plausible to infer that the entities (Trinity and CoreCivic) and individuals (Steward Wagner, Director Fairbanks, CEO Hininger, Captain Smith, Officer Spence, and Officer Leon) named as Defendants in the Amended Complaint are state actors under Section 1983. *See Hull v. Davidson Cnty. Sheriff's Off.*, No. 3:16-cv-02920, 2017 WL 1322104, at *4 (M.D. Tenn. Apr. 3, 2017) (concluding that an entity contracted to provide food services to inmates is a state actor for Section 1983 purposes); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996) (holding that private entity contracted to operate a prison, as well as its employees, were acting under color of state law). As to the second requirement, *i.e.*, a deprivation of rights secured by federal law, Plaintiff does not clearly explain what claim or claims he is asserting against which Defendants. (*See* Doc. No. 5 at 5 (generally invoking his rights under the First Amendment, the Eighth Amendment, the Due Process Clause of the Fifth Amendment, and the Due Process and Equal Protection Clauses of the Fourteenth Amendment).) So the Court will use the approach taken by the Sixth Circuit at the initial review stage of another pro se

prisoner's civil rights case, and consider whether the facts alleged in the Amended Compliant contain the elements of a constitutional claim, regardless of whether Plaintiff explicitly states that he is making such a claim against a particular defendant. *See Hill*, 630 F.3d at 471–72 (taking this approach "in light of the 'indulgent treatment' that '[c]ourts are instructed to give . . . to the "inartfully pleaded" allegations of pro se prison litigants'" (quoting *Pasley v. Conerly*, 345 F. App'x 981, 986 (6th Cir. 2009))).

1.    *Defendants Fairbanks, Wagner, and Leon*

Plaintiff alleges that Director Fairbanks and Steward Wagner refused to process work credits from Plaintiff working in the kitchen at TTCC. About two months after Plaintiff raised this issue with Fairbanks and Wagner, Wagner allegedly fired Plaintiff from his kitchen job. Allegedly, when Plaintiff asked Wagner about the firing, Wagner said that Trinity has a "policy and custom to fire whoever they want, [job coordinator] Blackwell can send you up here and I'll send your Black butt back." And allegedly, when Plaintiff asked Fairbanks about the firing, Fairbanks said, "[t]hey do what the[y] want and [you] bet not ever step foot back in the[ir] kitchen or else." Fairbanks allegedly then placed the designation of "fired" beside Plaintiff's name in a TTCC database, whereafter Officer Leon allegedly enforced that designation by not allowing Plaintiff back in the kitchen.

Taking these allegations chronologically, Plaintiff fails to state a Section 1983 claim against Fairbanks and Wagner for allegedly refusing to process Plaintiff's work credits, because Tennessee prisoners do not "have a right under the Constitution to earn or receive sentence credits." *Bumpus v. Dyersburg, Tennessee*, No. 18-1246-JDT-CGC, 2019 WL 4279032, at *8 (W.D. Tenn. Sept. 10, 2019) (citing *Hansard v. Barrett*, 980 F.2d 1059, 1062 (6th Cir. 1992)); *see also Elsea v. Parris*, No. 3:22-CV-424, 2022 WL 17474445, at *5 (E.D. Tenn. Dec. 6, 2022)

(explaining that Tennessee prisoners do not have a constitutional or statutory right to earn sentence credits, as such credits are discretionary under Tenn. Code Ann. § 41-21-236(a)(2)).

Plaintiff likewise fails to state a claim against Wagner based solely on the discrete act of firing Plaintiff, because inmates do not have a constitutional right to a prison job. *See Martin v. O'Brien*, 207 F. App'x 587, 590 (6th Cir. 2006); *Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003). But if, for example, Plaintiff's firing from his kitchen job was in retaliation for the exercise of a constitutional right or motivated by racial animus, then Plaintiff may state a claim on those bases. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) ("[R]etaliation for the exercise of constitutional rights is itself a violation of the Constitution." (footnote omitted)); *Robinson v. Michigan Dep't of Corr. Med. Health Providers*, No. 19-10584, 2019 WL 2059120, at *8 (E.D. Mich. May 8, 2019) ("[G]enerally, despite the lack of a constitutional right to specific jobs or training, the Equal Protection Clause prohibits prison officials from making assignments based on race." (citations omitted)).

Plaintiff nonetheless fails to state a retaliation claim based on his firing. To establish a retaliation claim, "a prisoner must prove that (1) he engaged in protected conduct, (2) the defendant took an adverse action that is capable of deterring a person of 'ordinary firmness from continuing to engage in that conduct,' and (3) 'the adverse action was motivated at least in part by the [prisoner's] protected conduct.'" *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394, 398 (6th Cir. 1999)).

Here, it is plausible to infer that Plaintiff's oral complaint to Fairbanks and Wagner regarding work credits was protected conduct, *see Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018) ("An inmate has a right to file non-frivolous grievances against prison officials on his own behalf, whether written or oral." (internal citations and quotation marks omitted)), and that firing

Plaintiff from his kitchen job was a qualifying adverse action. *See Shehee v. Luttrell*, 199 F.3d 295, 301 (6th Cir. 1999) (noting that "dismissal from [a prison] commissary job" can be an adverse action). But Plaintiff does not provide factual allegations from which the Court can reasonably infer that his firing was motivated at least in part by his complaint about work credits. The only allegation linking Plaintiff's oral complaint to his firing is the temporal proximity between the two events. Temporal proximity can create "an inference of retaliatory motive," *Maben*, 887 F.3d at 268 (quoting *King v. Zamiara*, 680 F.3d 686, 695–96 (6th Cir. 2012)), but the gap in time here (about two months) is simply too large to establish the causation element of Plaintiff's retaliation claim on its own. *See Harper v. [Unknown] Arkesteyn*, No. 19-1928, 2020 WL 4877518, at *2 (6th Cir. Apr. 28, 2020); *Robinson v. Amble*, No. 18-2176, 2019 WL 5152775, at *3 (6th Cir. July 17, 2019).

Reading the allegations in Plaintiff's favor, however, he states a claim of racial discrimination against Steward Wagner based on his firing. "Prisoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race." *Brand v. Motley*, 526 F.3d 921, 924 (6th Cir. 2008) (quoting *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974)). For a prisoner to state a discrimination claim, he "need[s] only to allege sufficient facts to show 'that a state actor intentionally discriminated against [him] because of membership in a protected class.'" *Id.* (citations omitted). Here, Plaintiff alleges that he asked Wagner why Wagner fired him from his kitchen job, and Wagner said that Trinity has a "policy and custom to fire whoever they want, [job coordinator] Blackwell can send you up here and I'll send your Black butt back." Accepting these allegations as true, Wagner's unprompted reference to Plaintiff's race when explaining her reason for firing Plaintiff could reflect that Plaintiff may have been fired from

his prison job because of racial discrimination. Accordingly, Plaintiff may proceed with a racial discrimination claim against Wagner.

However, the Court will not allow Plaintiff to proceed with a related supervisory liability claim against Director Fairbanks. "In order to succeed on a supervisory liability claim, Plaintiff must show that 'a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate.'" *Garza v. Lansing Sch. Dist.*, 972 F.3d 853, 865 (6th Cir. 2020) (quoting *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)). Plaintiff essentially alleges that Fairbanks ratified Wagner's decision to fire Plaintiff, but as noted above, the isolated act of firing Plaintiff from his prison job is not, on its own, a viable basis for a Section 1983 claim. *See Martin*, 207 F. App'x at 590; *Argue*, 80 F. App'x at 429. Rather, it is Wagner's alleged discrimination that supports a Section 1983 claim, and the Court has no basis to impute knowledge of Wagner's alleged discrimination to Fairbanks. Likewise, Plaintiff does not allege any factual matter plausibly reflecting that Fairbanks' ratification of Wagner's decision was based on race.

Finally, Plaintiff also fails to state a claim against Officer Leon. The only allegation against Leon is that Leon told Plaintiff that Leon would enforce Plaintiff's designation of "fired" by not allowing Plaintiff back in the kitchen. Because "a prisoner does not have a constitutional right to prison employment or a particular prison job," *Martin*, 207 F. App'x at 590 (citing *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989)), Plaintiff's allegation against Leon does not suffice to state a Section 1983 claim against Leon.

### 2.    *Defendants Spence and Smith*

Plaintiff alleges that, on January 11, 2023, two inmates brutally attacked him and pushed him out of his housing pod. Allegedly, one of these inmates was "let in" from another pod by

Officer Spence. After being pushed out, allegedly, Plaintiff told Spence what happened, and Spence—in retaliation against Plaintiff and to avoid being fired—told a sergeant that Plaintiff was refusing to return to the pod during a count. The sergeant allegedly then searched and threatened to spray Plaintiff. Later, Plaintiff allegedly filled out an incident statement form and gave a copy to several people, including Captain Smith. Allegedly, when Plaintiff told Smith what happened, Plaintiff was placed in a booking holding cell and told—in retaliation against Plaintiff and to avoid an investigation—that he refused a cell assignment.

Although the alleged assault suffered by Plaintiff on January 11 is a very serious matter, the Amended Complaint does not contain sufficient allegations to impose liability on Officer Spence for the assault itself. The Eighth Amendment imposes a duty on prison officials to protect "prisoners from violence at the hands of other prisoners." *Bishop v. Hackel*, 636 F.3d 757, 766 (6th Cir. 2011) (quoting *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)). A prisoner, therefore, may assert a claim "for deliberate indifference to [his] safety." *Id.* (citing *Farmer*, 511 U.S. at 834). This claim has objective and subjective components. *Id.* The objective component requires a plaintiff to allege that "he [was] incarcerated under conditions posing a substantial risk of serious harm." *Id.* (quoting *Farmer*, 511 U.S. at 833). And the subjective component requires a plaintiff to allege that a prison official "acted with 'deliberate indifference' to inmate health or safety," *id.* (quoting *Farmer*, 511 U.S. at 834), meaning that the official "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *Id.* at 766–67 (quoting *Farmer*, 511 U.S. at 837).

For the purpose of initial review, Plaintiff satisfies the objective component by alleging that his housing pod was not properly secured, leading to Plaintiff being assaulted. But the subjective component is not satisfied by Plaintiff's bare allegation that Officer Spence "let in" one inmate from another housing pod. Even if a "reasonable prison official would have" considered an

outside inmate's presence in a housing pod to present an obvious risk, a particular prison official "who was unaware of a substantial risk of harm to an inmate may not be held liable under the Eighth Amendment." *See id.* at 767 (citing *Farmer*, 511 U.S. at 841–42). In other words, an officer who allows an inmate to enter a housing pod other than his own does not necessarily *know* (or, for that matter, even suspect) that the inmate's presence creates an excessive risk to some other inmate. Accordingly, Plaintiff has not plausibly alleged that Spence was aware of and consciously disregarded a substantial risk to Plaintiff, as required to state an Eighth Amendment failure-to-protect claim.

Accepting the allegations as true, however, Plaintiff may proceed with a retaliation claim against Officer Spence based on Spence's alleged actions *after* the assault. To restate, a retaliation claim requires that (1) a prisoner engaged in protected conduct, (2) a defendant took a sufficiently adverse action to deter that conduct, and (3) the adverse action was motivated at least in part by the protected conduct. *See Hill*, 630 F.3d at 472.

First, Plaintiff's alleged report of the assault to Spence was a constitutionally protected oral complaint. *See Maben*, 887 F.3d at 265. Second, "[a]n adverse action is one that is *capable* of deterring a person of ordinary firmness from exercising the constitutional right in question," and "the deterrent effect of the adverse action need not be great in order to be actionable." *Hill*, 630 F.3d at 472–73 (internal citations and quotation marks omitted). Here, Spence allegedly responded to Plaintiff's complaint by telling a sergeant that Plaintiff was refusing to return to the pod during a count, which resulted in the sergeant searching and threatening to spray Plaintiff. For screening purposes, it is reasonable to infer that the sergeant's actions were a foreseeable consequence of Spence's conduct, such that the Court may impute the sergeant's actions to Spence for the purpose of this "adverse action" analysis. *See LaFountain v. Harry*, 716 F.3d 944, 949 (6th Cir. 2013)

("Although defendants are not responsible for adverse actions that they do not cause, they are responsible for 'those consequences that inextricably follow from [their] alleged retaliatory conduct[.]'" (quoting *Siggers-El v. Barlow*, 412 F.3d 693, 702 (6th Cir. 2005))). And reading the allegations in Plaintiff's favor, the conduct imputed to Spence (a search accompanied by a threat of excessive force) and Spence's own conduct (reporting Plaintiff for violating a prison rule in an effort to escape blame for the assault) clears the low bar of plausibly alleging an adverse action. *See Scott v. Churchill*, 377 F.3d 565, 572 (6th Cir. 2004) ("[T]he mere potential threat of disciplinary sanctions is sufficiently adverse action to support a claim of retaliation."); *Reynolds-Bey v. Harris*, 428 F. App'x 493, 503–04 (6th Cir. 2011) (finding that a search accompanied by a threat of violence was a sufficiently adverse action). Third and finally, Plaintiff also plausibly alleges that Spence had a retaliatory motive, given Spence's incentive to shift blame from himself and the close temporal proximity between Plaintiff's complaint and Spence's actions. Plaintiff, therefore, may pursue a retaliation claim against Spence on this basis.

Plaintiff also states a claim against Captain Smith for retaliating against Plaintiff after the assault. First, as with Officer Spence, Plaintiff's alleged report of the assault to Smith was protected conduct. *See Maben*, 887 F.3d at 265. Second, liberally construing the allegations in Plaintiff's favor, Plaintiff alleges that Smith responded to Plaintiff's report by falsely accusing Plaintiff of refusing a cell assignment in an effort to avoid an investigation of the assault. For the purpose of initial review, that is sufficient to plausibly allege an adverse action. *See Scott v. Churchill*, 377 F.3d at 572. And third, as with the causation element for Spence, Plaintiff has plausibly alleged that Smith had a retaliatory motive, based on the allegation that Smith wanted to avoid an investigation and the close temporal proximity between the protected conduct and adverse action.

3.    *Defendants Trinity and CoreCivic*

To state a Section 1983 claim against a private entity (in this case, Trinity and CoreCivic), Plaintiff must allege that (1) he experienced a violation of his constitutional rights and (2) that constitutional violation was directly caused by a "policy or custom" of the private entity. *Savoie v. Martin*, 673 F.3d 488, 494 (6th Cir. 2012) (citing *Miller v. Sanilac Cnty.*, 606 F.3d 240, 255 (6th Cir. 2010)). Importantly, a private entity can be liable for a policy or custom only "of that [entity], rather than a policy or custom of" another entity. *See Johnson v. Karnes*, 398 F.3d 868, 877 (6th Cir. 2005) (citations omitted).

Plaintiff alleges that Trinity has a "policy and custom to fire whoever they want." As noted above, the only claim stated by Plaintiff with regard to his firing is the claim of racial discrimination against Steward Wagner. But it is not reasonable to infer that Trinity's alleged policy of permitting employees to fire inmates at-will directly caused Wagner to engage in the alleged racial discrimination. Plaintiff therefore fails to state a claim against Trinity.

Plaintiff alleges that, when he told TTCC's chief warden about the assault against Plaintiff, the warden said that he was unsurprised because CoreCivic had a "custom [of] maximiz[ing] salary wages [by] minimiz[ing] staff[,] which increases security risk." As explained above, Plaintiff fails to allege sufficient facts to state a claim against Officer Spence for failing to protect Plaintiff from the assault. The Court nonetheless assumes without deciding that Plaintiff could, in theory, ground an assault-based claim against CoreCivic on a constitutional deprivation committed by Trinity Steward Daily (despite Daily not being an employee of CoreCivic or a Defendant to this case). *See Stewart v. Warren Cnty. Bd. of Comm'rs*, 821 F. App'x 564, 572 (6th Cir. 2020) ("[A] municipality or entity could be liable for constitutional violations even where the municipality's employees themselves did not violate the plaintiff's constitutional rights." (citing *North v. Cuyahoga Cnty.*,

754 F. App'x 380, 389 (6th Cir. 2018)). The day before the assault, Daily allegedly told other inmates that she did not like Plaintiff and to keep Plaintiff out of her face, and then told Plaintiff to "to leave the kitchen and to beware of the hit that would be sent on [his] life." Accepting these allegations as true, it is reasonable to infer that Daily violated Plaintiff's constitutional rights by orchestrating an attack on him.[3] Even so, however, it is not reasonable to infer that CoreCivic's alleged policy of understaffing to maximize profit directly caused Daily to orchestrate an assault. So Plaintiff fails to state a claim against CoreCivic.

4.    *Defendant Hininger*

After naming CEO Hininger as a Defendant on the Amended Complaint form (Doc. No. 5 at 2), Plaintiff does not describe any specific actions taken by Hininger in the body of the Amended Complaint. Even under the liberal standard for reviewing pro se pleadings, thus fails to state a claim for relief against Hininger. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) ("Merely listing names in the caption of the complaint and alleging constitutional violations in the body of the complaint is not enough to sustain recovery under § 1983." (citing *Flagg Bros. v. Brooks*, 436 U.S. 149, 155–57 (1978))). Accordingly, Hininger will be dismissed as a party.

---

[3] It is unnecessary to determine the exact nature of such a constitutional deprivation, be it an Eighth Amendment excessive-force claim, *see Dallas v. Chippewa Corr. Facility*, No. 20-1941, 2022 WL 905857, at *4 (6th Cir. Mar. 1, 2022) ("[F]orce that is more than 'de minimis' and applied maliciously and sadistically for the very purpose of causing harm violates contemporary standards of decency to the point of satisfying the objective component regardless of the seriousness of the pain." (quoting *Hudson v. McMillian*, 503 U.S. 1, 9–10 (1992))), a Fourteenth Amendment substantive due process claim, *see Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996) (explaining that substantive due process can serve as a "limitation on official misconduct, which although not infringing on a fundamental right, is so literally 'conscience shocking,' hence oppressive, as to rise to the level of a substantive due process violation"), or some other claim. Regardless of the nature of any constitutional deprivation committed by Daily, Plaintiff has not plausibly alleged that the deprivation was directly caused by a policy or custom of CoreCivic.

5.      *Dismissal of Certain Requests for Relief*

Finally, the Court notes that in addition to requesting monetary damages, Plaintiff requests certain injunctive relief, certain declaratory relief, and the award of work credits. (Doc. No. 5 at 5.) Plaintiff's requests "for injunctive and declaratory relief [became] moot when he [was] transferred" from TTCC "to another facility." *See Price v. Stephenson*, No. 18-1702, 2019 WL 2603540, at *2 (6th Cir. Apr. 26, 2019) (affirming dismissal of prisoner's case under the Rule 12(b)(6) standard (citing *Parks v. Reans*, 510 F. App'x 414, 415 (6th Cir. 2013); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996))). And a federal court cannot award sentence credits in a Section 1983 case; rather, a habeas corpus petition is the exclusive avenue for a prisoner to bring "[c]hallenges to the validity of any confinement or to particulars affecting its duration." *See Muhammad v. Close*, 540 U.S. 749, 750 (2004) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973)). So only Plaintiff's request for monetary damages remains.

## III.    Motion Including a Jury Demand

Plaintiff filed a document captioned "Motion for Art. III courts Common law Jury trial demand 7th amendment." (Doc. No. 7.) Rule 38 of the Federal Rules of Civil Procedure preserves the right to a jury trial "as declared by the Seventh Amendment of the Constitution [] or as provided by federal statute." Fed. R. Civ. P. 38(a). This Court's Local Rule 7.03(b) also provides as follows: "If demand for a jury trial is made in the complaint or answer, the phrase 'JURY DEMAND' must appear immediately opposite the style of the case on the first page of the pleading and all subsequent filings." M.D. Tenn. L.R. 7.03(b).

The Amended Complaint substantially complies with this requirement, as it includes the phrase "Jury trial Demanded by plaintiff" on the upper right corner of the first page. (*See* Doc. No. 5 at 1.) That made it unnecessary for Plaintiff to file a separate motion requesting a jury trial. As a

technical matter, therefore, Plaintiff's motion (Doc. No. 7) will be denied as moot. But as a practical matter, pursuant to Plaintiff's demand in the Amended Complaint, any claims in this case that reach the point of trial will be heard by a jury.

## IV.  Conclusion

For these reasons, Plaintiff application to proceed as a pauper will be granted and his motion including a jury demand will be denied as moot. The Court concludes that Plaintiff has stated a claim of racial discrimination against Steward Wagner based on Wagner allegedly firing Plaintiff from his kitchen job, and claims of retaliation against Officer Spence and Captain Smith based on their alleged actions following the alleged assault of Plaintiff on January 11, 2023. Plaintiff may proceed with his request for monetary relief based on these claims. All other claims, Defendants, and requests for relief will be dismissed.

An appropriate Order will be entered.

_Eli Richardson_
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE